[Cite as *State v. Bernhart*, 2011-Ohio-2139.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 10CA64 |
| RONALD BERNHART | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Richland County Court of
                             Common Pleas, Case No. 09CR233


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      May 4, 2011


APPEARANCES:


For Plaintiff-Appellee              For Defendant-Appellant


JAMES J. MAYER, JR.                 RYAN M. HOOVLER
PROSECUTING ATTORNEY                13 Park Avenue West, Suite #300
RICHLAND COUNTY, OHIO               Mansfield, Ohio 44902

BY: KIRSTEN L. PSCHOLKA-GARTNER
Assistant Richland County Prosecutor
38 South Park Street
Mansfield, Ohio 44902

*Hoffman, P.J.*

{¶1} Defendant-appellant Ronald Bernhart appeals his conviction on two counts of assault on a peace officer in violation of R.C. 2901.13. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On December 11, 2008, Appellant sought medical attention for a bloody nose at the Richland Correctional Institution infirmary while incarcerated as an inmate. After the nosebleed subsided, corrections officers entered Appellant's cell telling him to "cuff up" to be escorted to segregation. Appellant refused to stand up or to respond to the officers. The officers then attempted to lift Appellant using his elbows. Appellant was uncooperative, and purposely made himself deadweight.

{¶3} Officer Vaughn Coburn left the cell to notify a supervisor regarding the situation. At the same time, Officer Burton Hairston attempted to guide Appellant into a standing position with his hand on the Appellant's elbow. Appellant pulled away violently. Officer Hairston then sprayed Appellant with pepper spray. Appellant rushed Officer Hairston, punching him several times in the chest with a closed fist.

{¶4} Officer Coburn witnessed the altercation, and attempted to assist Officer Hairston. During the ensuing struggle, Officer Coburn tripped over the bed in the cell and wound up with his legs across Appellant's chest area. Appellant continued to resist by punching Officer Coburn in the leg and kicking his legs.

{¶5} As a result of the incident, Appellant was indicted on two counts of assaulting a peace officer, in violation of R.C. 2903.13. A jury trial commenced on December 3, 2009. The jury returned a finding of guilty on both counts. The trial court

sentenced Appellant to ten months on each count, to run consecutive to each other and consecutive to the prison sentence he was serving.

{¶6} Appellant now appeals, assigning as error:

{¶7} "I. THE JURY VERDICT IN COUNT I AND II, ASSAULT, WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

{¶8} "II. THE JURY VERDICT IN COUNT I AND II, ASSAULT, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I & II.

{¶9} Appellant's assigned errors raise common and interrelated issues; therefore, we will address the arguments together.

{¶10} Appellant maintains his convictions on two counts of assault on a peace officer, in violation of R.C. 2903.13, are against the manifest weight and sufficiency of the evidence.

{¶11} R.C. 2903.13(A):

{¶12} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶13} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678

N.E.2d 541, 1997–Ohio–52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶14} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶15} At trial, Officer Coburn testified:

{¶16} "A. I continued to just basically try to talk to him, ask him what is going on, tell him what is going to be required of him, that he would have to go to segregation. I would tell him, you know, I can only ask you or tell you so many times, listen to me, but he was nonresponsive, meaning, as I recall, he would just sit there and basically just stared at us.

{¶17} "Q. Did Officer Hairston make any attempts - -

{¶18} "A. He did. He made a suggestion that perhaps we might try to help him stand and see if we could maybe - -

{¶19} "Q. Encourage him - -

{¶20} "A. - - you know, come on, there is no problem type of thing. We very carefully and without any force really at all on either side of Mr. Bernhart, we got under his elbows and arms and we just tried to see if he would stand off the bed for us. There was no cooperation at all. He kind of just - - to me I would explain it like he was like dead weight, just purposely, and, again, just staring at us.

{¶21} "Q. Again, at this point is he saying anything to you?

**{¶22}** "A. No, no.

**{¶23}** "Q. Now, what did you do at this point once you sat him back down?

**{¶24}** "A. At this point I walked out of the cell with the intention of telling supervision or notifying somebody what is going on over there with Mr. Bernhart at that time.

**{¶25}** "Q. Did you make it out of the cell?

**{¶26}** "A. Yes, I did. actually I made it over to my desk area where my phone is, and I really don't remember if it was a noise or I just happened to look back that way or whatever, but when I did the next thing that I see is Mr. Bernhart being combative with the yard officer, Mr. Hairston in this case.

**{¶27}** "Q. When you say combative, describe for us what that means?

**{¶28}** "A. Well, basically I saw Mr. Hairston trying to use his pepper spray, and I saw Inmate Bernhart standing up, kind of into his chest area at this point.

**{¶29}** "Q. Into whose chest area?

**{¶30}** "A. Yes.

**{¶31}** "Q. No, into whose chest area?

**{¶32}** "A. Mr. Hairston's.

**{¶33}** "Q. Would you describe that as a threatening-type posture?

**{¶34}** "A. Yes.

**{¶35}** "***

**{¶36}** "Q. Do they remain upright?

**{¶37}** "A. No. As I went into the cell Officer Hairston was trying to take - - he was trying to take the inmate to the floor in a way that we are trained to do at this point.

In the process of doing that, and me trying to assist, I actually about half tripped around the corner of this bed trying to get to the inmate. I wound up on the floor in a sitting position across the inmate's chest actually is how I wound up at that point. And, yes, he was striking at that point.

**{¶38}** "Q. He was - - 'he' being who?

**{¶39}** "A. Ronald Bernhart.

**{¶40}** "Q. Was striking who?

**{¶41}** "A. Was striking me.

**{¶42}** "Q. Did you witness him striking Office Hairston?

**{¶43}** "A. Only kicking, because actually in the position we were in, the only thing he really could have done to the other officer was to kick him. It appeared to me he was trying to do that. Actually he was trying to kick either one of us. He was kicking and trying to hit.

**{¶44}** "Q. Okay. Now, you were struck?

**{¶45}** "A. Yes, sir.

**{¶46}** "Q. Where on your body were you struck?

**{¶47}** "A. Primarily my right leg. I say primarily my right leg because, again, in the position I was, at the time on top of the inmate, he really couldn't get any further up my body to strike me in the facial area or something like that.

**{¶48}** "Q. Were you able to see Mr. Bernhart's face?

**{¶49}** "A. Yes, sir.

**{¶50}** "Q. And when you are sitting on his chest, so to speak, what are you trying to do?

**{¶51}** "A. I'm trying to get ahold of the other arm that he has free that he is hitting me with, because the opposing arm, his other arm at that time, Officer Hairston had got ahold of his other arm at that point. So my thought was to restrain the other arm at that point.

**{¶52}** "Q. Now, during this phase of your testimony, or this incident, was Mr. Bernhart saying anything to you?

**{¶53}** "A. Yes. He was screaming vulgarities of various types that I proably couldn't remember all the vulgarities he was using, along with, I believe, terms like, 'I will kill you,' things of that nature.

**{¶54}** "Q. Now, were those directed at you or the other officer?

**{¶55}** "A. It could have been directed at me or the other officer or both of us.

**{¶56}** "Q. Hard to tell in that situation?

**{¶57}** "A. I really don't know.

**{¶58}** "Q. How long did this take place? What is the time frame?

**{¶59}** "A. Three, five minutes."

**{¶60}** Tr. at 107-109; 109-111.

**{¶61}** Officer Hairston testified at trial:

**{¶62}** "Q. Once you got there, did you go immediately to the cell?

**{¶63}** "A. Yeah, I walked right in the cell because Coburn, I thought he was ready to go, I told him, hey, I'm ready to pick him up to take him to segregation.

**{¶64}** "Q. Okay. And so then you went in the cell?

**{¶65}** "A. Yeah, I walked in the cell thinking he was already ready to go, and that's when it was an issue.

**{¶66}** "Q. Now, did you approach and speak to Ronald Bernhart at the time?

**{¶67}** "A. Not at that time.  Coburn had a nice, calm demeanor with him, and he was still talking to Bernhart about, come on buddy, let's go ahead and cuff up.  You got to go to seg, and whatnot.  He didn't want to go.

**{¶68}** "***

**{¶69}** "Q. Or did either of you try to pick him up?

**{¶70}** "A. No, no.  Coburn went out to make a phone call.  He came back, and then I was talking to him, I said, man, what's going on, buddy?  I know you got in an argument over there.  I said, hey, you can go back to seg, you can get in a cell by yourself or whatever, you are going to sit down and be able to think things over, calm down, whatever it was.

**{¶71}** "Then I reached down and took my left hand and put it on his right elbow, and then when I reached down to see if he was going to stand up again he snatched away from me violently.  And when he just turned, just like that in an outburst, I pulled my pepper spray out and sprayed him.

**{¶72}** "***

**{¶73}** "Q. Then how did things proceed from there?

**{¶74}** "A. The second time, like I said, I began to talk to him.  And in looking in his face he seemed to be responsive to what I was saying, but you can't go by looks and whatnot.  When I just kind of barely touched his elbow, he just acted out violently and pulled his hand back.  I had to step back, I thought he was going to strike me at that point, and I backed up.  I immediately pulled my mace out and sprayed him.

**{¶75}** "Q. What was his response to the mace?

**{¶76}** "A. Well, he did very well with it unfortunately.

**{¶77}** "Q. What do you mean by he did very well?

**{¶78}** "A. Most people have a bad reaction to it. Bernhart, for some reason, after he got sprayed, just strobed his eyes a few times and it didn't affect him at all.

**{¶79}** "Q. Was he looking at you?

**{¶80}** "A. Yes. He strobed his eyes two or three times and then looked me square in the face. He was standing on one side of the cell and I was standing on the other side of the cell, Coburn was at the door, kind of right at the doorway, and he was upset.

**{¶81}** "Q. When you say strobed his eyes?

**{¶82}** "A. Yes. He batted his eyes, and then just stopped, like it didn't have any effect on him.

**{¶83}** "Q. Did he say anything at that point?

**{¶84}** "A. Not at that point. Not at that point he didn't say anything and whatnot. I began to give him more verbal commands, turn around, put your hands on the wall, turn around and cuff up. When I stepped toward him again and placed my hand on his elbow again, he started screaming and ran toward me and punched me in the chest twice.

**{¶85}** "Q. Now, you say punched you in the chest, was that open or closed?

**{¶86}** "A. Closed fist.

**{¶87}** "Q. Closed fist?

**{¶88}** "A. Yes.

**{¶89}** "Q. Straight in your chest?

**{¶90}** "A. Yes, sir.

**{¶91}** "***

**{¶92}** "Q. Now, you saw Ronald Bernhart actually striking Officer Coburn?

**{¶93}** "A. Yes, sir.

**{¶94}** "Q. With what?

**{¶95}** "A. With like a hammer fist.  He was trying to hit him with his fist like a hammer.

**{¶96}** "Q. You still had one hand?

**{¶97}** "A. Yeah, I still had his, you know, chest pretty much pinned to the floor somehow, but he got over on one side and was trying to get a good swing on him, and trying to bite and trying to do whatever he could.

**{¶98}** "Q. You mentioned bite, how did he try and do that?

**{¶99}** "A. We pretty much had him controlled for the most part, but he was trying to do whatever he could to bite, hit, kick, whatever, he just went berserk.

**{¶100}** "Q. Was there anything close enough for him to bite?

**{¶101}** "A. Yeah.  Believe it or not, he almost bit my partner because he kind of got twisted around and somehow my partner got his legs entangled on him in some crazy, bizarre way, and he almost got bit right in the rear end.

**{¶102}** "Q. While this is going on, are you being struck by anything?

**{¶103}** "A. After he hit me the few times and whatnot, I didn't let him get another position on me to be able to do that.  So he then kind of focused on Coburn and began to strike and kick him.  We did a good job in controlling him.  I think if he would have got a little more room he probably could have hurt somebody.

**{¶104}** "***

**{¶105}** "Q. Now, once you were successful in regaining control, what actions or steps were taken at that point?

**{¶106}** "A. After we cuffed him up?

**{¶107}** "Q. After you cuffed him.

**{¶108}** "A. After he was cuffed up and we sat him back up, he began - - he was still yelling and screaming, threatening and saying, 'I'm going to kill you guys,' and all that old cussing and carrying on.

**{¶109}** "Q. Let me pause you right there.  During the actual altercation itself, was he yelling and screaming?

**{¶110}** "A. Yes, yes, yes.  Like I said, exactly what he was saying I really wasn't paying attention to what he was saying.  I was concentrating on what he was doing.

**{¶111}** "Q. Was there any doubt in your mind, based on his verbal and physical actions, that he was trying to hurt you?

**{¶112}** "A. Oh, yes.

**{¶113}** "Q. There is doubt - -

**{¶114}** "A. No, he was trying to hurt us.

**{¶115}** "Q. At the time were you concerned for your own safety?

**{¶116}** "A. Oh, yes.  Yes, sir."

**{¶117}** Tr. at 137-138; 142; 146; 148-149; 152-153.

**{¶118}** Finally, Appellant himself testified on direct examination:

**{¶119}** "Q. Do you remember being in the infirmary on December 11th of last year?

{¶120} "A. Yes, sir.

{¶121} "Q. Do you remember Officer Coburn coming to you to tell you it was time to go to seg?

{¶122} "A. Yes, sir.

{¶123} "Q. What happened after that?

{¶124} "A. He sprayed me with mace, and C.O. Bernard and Thompson and Hamilton and Pastor Paul came and told me to cuff up.  And Lieutenant Hamm and Sager and Coburn ordered me to go to shift captain.

{¶125} "Q. What happened after you were maced?

{¶126} "A. Thompson gave me a direct order to come out of the cell at Richland Correctional, an eight by twelve cell, cement blocks, bloody nose.  Thompson, Sager and Bernard was pepper sprayed, and Dwight Clark, and the staff members was Angel Martin and Dwight Clark, and Gixler, and Chad Clark, Dennis Clark and Dwight Clark.

{¶127} "Q. Was that it?

{¶128} "A. Yes.

{¶129} "Q. And then you went to seg without incident, correct?

{¶130} "A. Right.

{¶131} Tr. at 177

{¶132} On cross-examination, Appellant testified:

{¶133} "Q. I'm not so much concerned with you being robbed in 2009 and 2010, at least not at this point.  With respect to the nosebleed in December of 2008, do you remember how you got it?

**{¶134}** "A. Yes.   I got into a fight with Lieutenant Thompson and Lieutenant Hamm.

**{¶135}** "Q. You are saying Lieutenant Thompson gave you a nosebleed?

**{¶136}** "A. Yes, sir.

**{¶137}** "Q. And that's why you were in the infirmary?

**{¶138}** "A. Yes, sir.

**{¶139}** "Q. When did he give you this nosebleed?

**{¶140}** "A. December 11th of 2012.

**{¶141}** "Q. 2012?

**{¶142}** "A. Yep.

**{¶143}** "Q. Okay.  So tell me what happened on December 11th, 2008.

**{¶144}** "A. Okay, 2007, Dwight Clark, Dennis Clark, the Crushing Clay, Sand and Gravel, Sager ordered me to go to segregation, and 4 Lower or 4 Upper, I was in house 1 Lower, Thompson.

**{¶145}** "Q. Do you remember Officer Coburn asking you to cuff up?

**{¶146}** "A. Yes, sir, I do.

**{¶147}** "Q. And do you remember how you responded?

**{¶148}** "A. Yeah.

**{¶149}** "Q. Did you stand up and get cuffed up as he requested?

**{¶150}** "A. No, sir.

**{¶151}** "Q. Why not?

**{¶152}** "A. Because I have been ordered by Lieutenant Thompson and C.O.s before, in the housing units that I have been at, and Lieutenant Thompson and Tim

Rowell was housing in 1 Lower, and they had birds and dogs and cats there, Tender

Loving Dog Care Program.  And December 12th, Brown was my officer at the time.

**{¶153}** "Q. I guess I missed the part in there where you explained why you didn't

cuff up.

**{¶154}** "A. Because Thompson was playing games with me and the food

coordinator.

**{¶155}** "***

**{¶156}** "Q. What did you do when you were hit with the pepper spray?

**{¶157}** "A. When I was hit with the paper (sic) spray I swung my arm.

**{¶158}** "Q. In what direction?

**{¶159}** "A. Upward.

**{¶160}** "Q. Why would you swing your arm like that?

**{¶161}** "A. Because to protect myself of [sic] being struck by a blunt object.

**{¶162}** "Q. Now, we were worrying about pepper spray at the time, why are you

worrying about a blunt object?

**{¶163}** "A. Because I'm a carpenter, and Paul and Suzie Hartman and Otto

Phillips - -

**{¶164}** "Q. Let me just interrupt you for a minute.  Now, I don't pretend to be a

carpenter, but I don't remember pepper spray being something one deals with as a

carpenter.  Why would the two make any connection there?

**{¶165}** "A. Because I was going to church at the Mennonite church.

**{¶166}** "Q. Let me interrupt you there.  If somebody is spraying pepper spray in

your face, isn't your immediate concern the pepper spray?

**{¶167}** "A. Yes.

**{¶168}** "Q. Okay. And it might be a secondary thought about a blunt object, as you say, because of some carpentry experience?

**{¶169}** "A. Yes.

**{¶170}** "Q. If your first thought is I got to get out the pepper spray, and you raise your hand, as you indicated, back behind your head - -

**{¶171}** "A. Right.

**{¶172}** "Q. – how is that going to stop pepper spray from reaching your eyes?

**{¶173}** "A. Because the cross of Richland County and the castle and Lieutenant Thompson sprayed me with mace December 12th of 2011.

**{¶174}** "Q. And raising your arm back behind your head in sudden fashion, do you agree, can be interpreted as suddenly pulling back?

**{¶175}** "A. Yes.

**{¶176}** "Q. What did you do at that point once you pulled back?

**{¶177}** "A. Once I pulled back I got sprayed again with mace, and I refused and that's when Coburn and Thompson and Sager, Coburn said Bernhart got sprayed with mace, level twelve, and orange and yellow and blue.

**{¶178}** "Q. How did all of this end up on the floor then?

**{¶179}** "A. Because Coburn threw me on the floor, grabbed my arm behind my back. When he grabbed my hand and threw my hand behind my head Lieutenant Hamm came in there and I grabbed him by the back of the leg.

**{¶180}** "Q. So you just laid there passively on the floor holding onto his leg?

**{¶181}** "A. Yes.

**{¶182}** "Q. What were they doing at this time?

**{¶183}** "A. They was standing on my back.

**{¶184}** "Q. Standing on your back?

**{¶185}** "A. Or, kneeling on my back, and Thompson was giving me a direct order to cuff up and come out of the cell.

**{¶186}** "Q. Were you complying with those orders at that point?

**{¶187}** "A. Yes, sir.

**{¶188}** "Q. So it's your testimony, just so I'm clear, you were seated on the bed?

**{¶189}** "A. Right.

**{¶190}** "Q. You refused to cuff up?

**{¶191}** "A. Right.

**{¶192}** "Q. They sprayed you with mace?

**{¶193}** "A. Right.

**{¶194}** "Q. You threw your arm back behind your head?

**{¶195}** "A. Right.

**{¶196}** "Q. And at some point you are thrown on the floor, you land on your back?

**{¶197}** "A. Right."

**{¶198}** Tr. at 181-182; 186-189.

{¶199} Upon review of the testimonial evidence and the record set forth above, we find Appellant's convictions are supported by the manifest weight and sufficiency of the evidence.  Both corrections officers testified they suffered physical harm as a result of Appellant's knowingly hitting and kicking them during the altercation while removing Appellant from the cell.  The officers' testimony indicates Appellant verbally threatened the officers, and knowingly acted in causing the harm.  Appellant's unresponsive and disjointed testimony does not demonstrate otherwise.   Accordingly, Appellant's conviction in the Richland County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Farmer, J.  and

Wise, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/ John W. Wise _____
HON. JOHN W. WISE

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                              :
                                           :
    Plaintiff-Appellee                 :
                                           :
-vs-                                       :          JUDGMENT ENTRY
                                           :
RONALD BERNHART                            :
                                           :
    Defendant-Appellant                :          Case No. 10CA64

For the reasons stated in our accompanying Opinion, Appellant's convictions in the Richland County Court of Common Pleas are affirmed.  Costs to Appellant.


s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/ John W. Wise_____
HON. JOHN W. WISE